# In the United States Court of Federal Claims

Case Number 07-655 C

FOR PUBLICATION

Filed: May 3, 2011

* * * * * * * * * * * * * * * * * * * * * * * *

|  |  |  |
|---|---|---|
| | * | |
| **JULLIE G. HORN**, | * | |
| | * | |
| *Plaintiff*, | * | Motion for Summary Judgment; |
| | * | RCFC 56(c); Requirements Contract; |
| v. | * | Indefinite Quantity Contract; |
| | * | *Torncello v. United States*; Federal |
| | * | Acquisition Regulations; Lack of |
| **THE UNITED STATES**, | * | Mutuality of Intent and Consideration |
| | * | Unenforceable Agreement. |
| *Defendant*. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

*Douglas N. Dorris*, Howerton, Dorris & Stone, Marion, Illinois, for Plaintiff.

*Paul D. Oliver*, Trial Attorney, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson,* Director, *Kirk Manhardt*, Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for Defendant.

———————————————

## OPINION and ORDER

———————————————

SMITH, Senior Judge:

In this case, Jullie G. Horn brought suit, pursuant to the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. §§ 601-613 (2006),[1] claiming the United States Federal Bureau of Prisons

———————————————

[1] / The Court notes that, effective on January 4, 2011, Congress amended the Contract Disputes Act.  *See* Act of Jan. 4, 2011, Pub. L. No. 111-350, 124 Stat. 3677.  The amendments to the CDA were enacted to "remove ambiguities, contradictions, and other imperfections," while conforming with the purpose of the original enactment.  Pub. L. 111-350 § 2(b), 124 Stat. 3677.  In addition, the CDA provisions have been relocated from 41 U.S.C. §§ 601-613 (2006) to 41 U.S.C. §§ 7101-7109 (2011).

("BOP") breached her contract.  On October 1, 2005, Ms. Horn entered into a contract with the BOP to perform dental hygienist services for inmates incarcerated at the United States Penitentiary, Marion, Illinois.   In her Complaint, Ms. Horn alleges the BOP improperly terminated her contract by failing to utilize her services in accordance with the estimated quantity schedule contained in the contract.  In addition, Ms. Horn alleges the BOP negligently estimated its dental hygienist needs when issuing the solicitation.  As a result, Ms. Horn filed suit in this Court seeking damages including lost wages, interest, and litigation costs.

In response to Ms. Horn's Complaint, the Government filed a Motion for Summary Judgment pursuant to Rule 56(c) of the Rules of the United States Court of Federal Claims ("RCFC").  In its Motion, the Government argues that Ms. Horn's contract simply contained an estimated range of services to be provided, thereby precluding the recovery of lost profits. Moreover, the Government argues the plain language of the contract allowed the BOP to utilize the services of an in-house dental hygienist.   After careful consideration, the Court hereby **GRANTS** the Government's Motion for Summary Judgment.

## FACTS [2]

On August 22, 2005, the BOP issued a solicitation seeking the services of a dental hygienist contractor.  App. 1 at 1-2.  On October 1, 2005, Jullie Horn was awarded Contract No. DJB40904052 to provide "professional dental hygiene services under the direction of the [BOP] Dentist to the inmate population at the United States Penitentiary and Federal Prison Camp, Marion, Illinois."  App. 1 at 6, 11.  Pursuant to the contract's "Schedule Of Supplies/Services," Ms. Horn was contracted to provide a maximum of 1,560 one-hour dental hygiene sessions over the term of the contract at a unit price of $32 per session.  App. 1 at 6, 13.  The Contract was awarded to Ms. Horn for a fixed price of $49,920.  App. 1 at 6, 13.

In accordance with Federal Acquisition Regulations ("FAR") 52.216-21, Section A.7 expressly designated Ms. Horn's contract a "REQUIREMENTS" contract:

(a)    This is a requirements contract for the supplies or services specified, and effective for the period stated, in the Schedule. The quantities of supplies or services specified in the Schedule are estimates only and are not purchased by this contract. Except as this contract may otherwise provide, if the Government's requirements do not result in orders in the quantities described as "estimated" or "maximum" in the Schedule, that fact shall not constitute the basis for an equitable price adjustment.

App. 1 at 18 (citing FAR 52.216-21 (OCT 1995)).  Section A.7 goes further to specify the scope of the estimates contained in Ms. Horn's contract:

---

[2] /  In order to achieve uniformity, the Court shall cite to Defendant's Appendices attached to its Motion for Summary Judgment as "App. 1 at __" and the Appendices attached to its Reply Brief as "App. 2 at __."  Defendant's Appendices contain uncontested documents, such as the Bureau of Prison solicitation, Ms. Horn's contract, the Complaint, Ms. Horn's claim submitted to the contracting officer, and vouchers for services performed by Ms. Horn.

(c)   The estimated quantities are not the total requirements of the Government activity specified in the Schedule, but are estimates of requirements in excess of the quantities that the activity itself furnish within its own capabilities. Except as this contract otherwise provides, the Government shall order from the Contractor all of that activity's requirements for supplies and services specified in the schedule that exceed the quantities that the activity may itself furnish within its own capabilities.

App. 1 at 18 (citing FAR 52.216-21 (OCT 1995) Alternate I (APR 1984)). [3]

On November 7, 2005, approximately one month after the contract award, the BOP dental supervisor, Dr. Ronald McCuan, approached Ms. Horn and informed her that BOP would no longer utilize her services.  Def.'s Proposed Findings of Uncontroverted Fact ¶ 13.  Instead, the BOP opted to obtain the services of an in-house dental hygienist to perform the same services as Ms. Horn.  App. 1 at 49.  At that time, Ms. Horn had completed 130 one-hour sessions, approximately 8% of the contract estimate, and had been properly paid for each session completed.  App. 1 at 46, 66.

On July 13, 2006, Ms. Horn submitted a claim to the BOP contracting officer, Ms. Tammy Butler, stating:

This contract, contract #DJB40904052, was to expire on September 30, 2006, yet the contract was terminated by USP – Marion on November 9, 2005 for budgetary concerns.

As the contract did not incorporate any termination procedures, the termination of Mrs. [Horn]'s contract was a material breach of contract by USP – Marion.  As a result Mrs. [Horn] was forced to find other employment, but was only successful in finding part-time work.

. . . [Mrs. Horn] is seeking damages for breach of contract, including lost wages of over $30,000.

App. 2 at 1.  Ms. Horn's claim is premised upon the conclusion that the BOP's decision to utilize the services of an in-house dental hygienist constituted a material breach of the contract.

By letter dated September 11, 2006, the contracting officer issued a final decision denying Ms. Horn's claim in accordance with the CDA.  App. 2 at 3.  The contracting officer stated that Ms. Horn's contract had not, in fact, been terminated.  App. 2 at 2.  Referring to

---

[3] /  According to FAR 52.216-21, Alternate I shall be used as a substitute "[i]f the requirements contract is for non-personal services . . . and covers estimated requirements that exceed a specific Government activity's internal capability to produce or perform."  According to Section A.14, Ms. Horn's contract was designated as a "Non-personal services contract, as defined in Federal Acquisition Regulation (FAR) 37.101, under which the Contractor is an independent Contractor."  App. 1 at 26; *see also* FAR 37.101 (OCT 1995).

Section A.7 of the contract, the contracting officer further noted "[t]he quantities of supplies or services specified in the Schedule are estimates only and are not purchased by [the] contract." App. 2 at 2; App. 1 at 18.  As a result, the contracting officer concluded that "Ms. [Horn] was properly paid for all services ordered by and actually rendered to USP Marion under this contract." App. 2 at 3.

In response to the contracting officer's denial, Ms. Horn filed suit in this Court on September 10, 2007. [4]  In her Complaint, Ms. Horn seeks damages "in the amount of $31,603, plus interest" for breach of contract due to the BOP's improper termination of her contract. Compl. ¶¶ 2, 4.  In response to Ms. Horn's Complaint, the Government filed a Motion for Summary Judgment on August 9, 2010.

## DISCUSSION

### I.    Standard of Review

Under RCFC 56(c), summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *See* RCFC 56(c)(1); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Jay v. Sec'y of Dep't of Health & Human Servs.*, 998 F.2d 979, 982 (Fed. Cir. 1993).  As a general rule, a fact only becomes material if it might "affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248.  As a result, disputes over facts that are not outcome determinative will not preclude the entry of summary judgment. *Id.*

Questions involving contract interpretations are generally suitable for disposition by summary judgment.  *See Muniz v. United States*, 972 F.2d 1304, 1309 (Fed. Cir. 1992).  Summary judgment is not appropriate where the Court concludes that the terms of the contract are ambiguous and require external evidence to aid in the resolution.  *See Beta Sys., Inc. v. United States*, 838 F.2d 1179, 1183 (Fed. Cir. 1988).  If the terms of the contract are unambiguous, by contrast, then summary judgment is a proper procedural method to adjudicate the claim.  *See, e.g., Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1368 (Fed. Cir. 2004).

When the Court is charged with interpreting provisions of a contract, the plain language is necessarily the starting point.  *See Textron Def. Sys. v. Windall*, 143 F.3d 1465, 1468 (Fed. Cir. 1998).  In order to address the Government's Motion for Summary Judgment, the Court is tasked with interpreting Section A.7 of Ms. Horn's contract.  After careful review, it is clear to the Court that the terms of Section A.7, which consists of boilerplate FAR provisions, are unambiguous.  Therefore, disposition by summary judgment is appropriate in this matter.

---

[4] / In Ms. Horn's claim submitted to the contracting officer, she sought "damages for breach of contract, including *lost wages* of over $30,000." App. 2 at 1 (emphasis added).  In the Complaint, however, Ms. Horn's demand simply seeks damages in the amount of "$31,603, plus interest." Compl. at 2.  While Ms. Horn does not expressly designate the relief sought as "lost wages" in the Complaint, the Court assumes that the damages sought in her Complaint parallel the claim submitted to the contracting officer.

4

## II.     The Parties' Arguments

In her Complaint, Ms. Horn alleges that the BOP "terminated [her] contract, constituting breach of the contract," entitling her to damages in the amount of "$31,603, plus interest." Compl. ¶¶ 2, 4.  It appears to the Court that Ms. Horn's argument is premised on the theory that she is entitled to the difference between the compensation she received for performing 130 dental hygienist sessions and the compensation she would have received had the BOP utilized her services in accordance with the maximum quantity indicated under the "Schedule Of Supplies/Services" provision of the contract.

In its Motion for Summary Judgment, the Government advances two arguments in response to Ms. Horn's Complaint.  First, the Government contends that Ms. Horn's contract was never actually terminated by the BOP contracting officer.  Def.'s Mot. for Summ. J. 6.  Rather, the Government argues that the BOP simply allowed Ms. Horn's contract to expire at the end of its term after deciding to utilize the services of an in-house dental hygienist.  Def.'s Mot. for Summ. J. 6-7.    Second, the Government asserts that, because Ms. Horn entered into a requirements contract with the BOP, "Ms. Horn is only entitled to compensation for work performed."  Def.'s Motion for Summ. J. 9.  In support of this argument, the Government points the Court's attention to Section A.7(a) of the contract, which states, "This is a requirements contract for the suppliers or services specified, and effective for the period stated in the Schedule."  App. 1 at 18.  Additionally, the Government cites to the contract's "Schedule of Supplies/Services" provision for the proposition that the contract did not guarantee a specific amount of work and only entitled Ms. Horn to compensation for actual work performed.  App. 1 at 6; Def.'s Mot. for Summ. J. 9.

In Response to the Government's Motion for Summary Judgment, Ms. Horn argues that, although the Government had the discretion to utilize in-house dental services, it was not relieved of its good faith obligation to provide a reasonable estimate of its needs at the time the contract was solicited by the BOP.  Pl.'s Resp. 5.  In support of this position, Ms. Horn cites to deposition testimony to argue the BOP was in the process of hiring an in-house dental hygienist to replace Ms. Horn prior to the contract award.  Pl.'s Resp. 5-6.  As a result, Ms. Horn argues that the Government's estimates were negligently calculated and in violation of the Government's obligation to use "reasonable care" when estimating its needs for a services contract, amounting to misrepresentation.  Pl.'s Resp. 7-9.

## III.     Ms. Horn's Contract with the BOP is Not a Requirements Contract

In analyzing the arguments advanced in the Government's Motion for Summary Judgment and the Plaintiff's Response thereto, the Court notes that it is not bound by the superficial language of the contract at issue in this matter.  Rather, the Court is compelled to look closely at the terms of the contract and interpret their operations accordingly.  *See Ralph Constr., Inc. v. United States*, 4 Cl. Ct. 727, 731 (1984) (citing *Torncello v. United States*, 681 F.2d 756, 760 (Ct. Cl. 1982)).[5]  Although Ms. Horn's contract states, "This is a *requirements contract* for

---

[5] /  In accordance with FAR 16.501-2, an indefinite delivery contract must neatly fit into one of three types of contracts:  (1) definite quantity contract; (2) indefinite quantity contract; or a (3) requirements contracts.  *See Torncello*, 681 F.2d at 761.

the . . . services specified," the plain language of the contract is misleading.  App. 1 at 18 (emphasis added).

Generally, requirements contracts are formed when a contractor is given the exclusive right to perform a service for the Government at a fixed price and for a specified duration.  *See* FAR 16.053(a) (a requirements contract "calls for the government to fill all its actual requirements for specified supplies or services during the contract period by purchasing from the awardee . . . .");  *see also Modern Systems Technology Corp. v. United States*, 979 F.2d 200, 205 (Fed. Cir. 1992).  Thus, exclusivity is the essential element that distinguishes a requirements contract from other forms of indefinite delivery contracts.  *Mason v. United States*, 615 F.2d 1343, 1346 (Ct. Cl. 1980).

Despite the fact that the BOP incorporated a boiler-plate FAR provision designating the contract as a "REQUIREMENTS" contract, the element of exclusivity was lacking in the agreement.  App. 1 at 18; *see also* FAR 52.216.21 (Oct. 1995).  Nowhere in the contract does the BOP express the intent to exclusively use Ms. Horn to fulfill all of its dental hygienist needs.  To the contrary, Section A.7(c) of the contract makes clear that the BOP only intended to utilize Ms. Horn for the services it could not fulfill in-house, stating, "the Government shall order from the Contractor all of that activity's requirements for . . . services specified in the schedule that *exceed the quantities that the activity may itself furnish within its own capabilities.*" App 1 at 18 (citing FAR 52.216-21 (Oct. 1995) Alternate I (Apr. 1984)) (emphasis added).  Consistent with the Court's interpretation of Section A.7(c), the Government similarly reads Section A.7(c) as "[giving] the BOP the unqualified discretion to fulfill its dental hygienist needs in-house." Def.'s Mot. for Summ. J. 6.

Although it appears that both parties entered into the contract with the intent to form a requirements contract, that fact cannot overcome the plain language of the contract.  Because the Government did not enter into the contract with the intent to utilize Ms. Horn's dental hygienist services exclusively, the Court concludes the contract in this matter cannot be interpreted as a requirements contract.

## IV.   The Contract is Unenforceable as an Indefinite Quantities Contract

Next, the Court turns its attention to whether Ms. Horn's contract, when viewed as an indefinite quantity contract, demonstrates the requisite mutuality of obligation and consideration. In order for a contract to be enforceable, it must "have both consideration to ensure mutuality of obligation and sufficient definiteness so as to provide a basis for determining the existence of a breach and for giving an appropriate remedy."  *J. Cooper & Assocs. v. United States*, 53 Fed. Cl. 8, 18 (2002) (citing *Aviation Contractor Employees, Inc. v. United States*, 945 F.2d 1568, 1572-74 (Fed. Cir. 1991)).   Thus, if any of the fundamental contract requirements are lacking, the Court must declare the contract an unenforceable instrument.

As a general rule, an indefinite quantities contract "differs from a requirements contract in that [an indefinite quantities contract] does not oblige the buyer to purchase more from the seller than a stated minimum, whereas [a requirements contract] obliges the buyer to buy from the seller all of its requirements of the relevant goods or services."  *Varilease Tech. Group, Inc.*

*v. United States*, 289 F.3d 795, 799 (Fed. Cir. 2002) (citing *Travel Centre v. Barram*, 236 F.3d 1316, 1318-19 (Fed. Cir. 2001)).  Therefore, when a contract fails as a requirements contract for lack of exclusivity, it is not uncommon for the court to interpret the operative contract provisions as creating an indefinite quantities contract.  *Torncello*, 681 F.2d at 761.

In order for an indefinite quantities contract to be enforceable, it must: (1) specify the period of the contract; (2) specify the total minimum and maximum quantity of supplies or services for the Government to purchase; and (3) include a statement of work.  *See* FAR 16.504(a)(4)(i)-(iii); *see also Varilease Tech. Group, Inc.*, 289 F.3d at 799-800.  Without an expressly stated minimum quantity purchased by the contract, however, an indefinite quantities contract fails for lack of mutuality and consideration because it does not specifically define the parties' obligations under the contract.  *See, e.g., Maxima Corp. v. United States*, 847 F.2d 1549, 1557 (Fed. Cir. 1988) (noting a minimum quantity clause "serves to ensure mutuality of obligations and to make the contract enforceable by both parties to it").

While many factors are relevant in determining whether a contract qualifies as an indefinite quantities contract, the Court need not look any further than the fact that the contract at issue lacks a minimum quantity term.  Without a stated minimum, the contract is precisely the type of contract the Supreme Court addressed in *Willard, Sutherland & Co. v. United States*, 262 U.S. 489, 43 S. Ct. 592, 67 L. Ed. 1986 (1923), holding, "There is nothing in the writing which required the Government to take, or limited its demand, to any ascertainable quantity.  It must be held that, for lack of consideration and mutuality, *the contract was not enforceable*."  *Willard*, 262 U.S. at 493 (emphasis added).  This principle was further expounded by the United States Court of Appeals for the Federal Circuit in *Torncello*, reasoning:

> [I]t is the very essence of a requirement contract . . . . that the buyer agree to turn to the supplier for all of its needs.  If there is not a commitment for all needs, then the relation is not different from an indefinite quantities contract with no required minimum, the very type of relation that the Supreme Court held . . . could not be a contract."

*Torncello*, 681 F.2d at 768 (citations omitted).

After carefully reviewing the terms of the contract, the Court concludes that the contract at issue does not contain the necessary elements to be considered an indefinite quantities contract.  As discussed *supra*, the clear language of the contract merely required the Government to utilize Ms. Horn's services to the extent that the BOP could not fulfill its needs in-house.  *See* App 1 at 18 (citing FAR 52.216-21 (Oct. 1995) Alternate I (Apr. 1984)); Def.'s Mot. for Summ. J. 6.  The contract neither required the BOP to order *all* of its dental hygienist services from Ms. Horn, nor did it contain a minimum quantity purchase term in accordance with FAR 16.504(a)(4)(ii).  Thus, the enforcement of such a contract must fail for lack of mutuality and consideration when viewed as either a requirements contract or an indefinite quantities contract.

7

## V.    Damages

Turning to the question of whether Ms. Horn is entitled to damages, the Court notes that Ms. Horn does not dispute the fact that she was paid the correct amount for the services actually performed for the BOP.  App. 1 at 66.  Rather, Ms. Horn's claim for damages in the amount of "$31,603, plus interest" appears to be premised on a damages theory of lost profits.  Compl. ¶ 4.

Although the contract has been declared unenforceable at its inception, Ms. Horn is nonetheless entitled to payment for services actually ordered by, and performed for, the BOP. *See Willard, Sutherland & Co.,* 262 U.S. at 494 ("By the conduct and performance of the parties, the contract was made definite and binding as to the [quantity of services] ordered and delivered according to its terms.").  However, due to the lack of an enforceable contract, Ms. Horn may not recover additional costs or lost profits.  *See Ralph Constr. Inc.,* 4 Cl. Ct. at 733 (citing *Yosemite Park & Curry Co. v. United States*, 582 F.2d 552, 561 (Ct. Cl. 1978)).  Therefore, it appearing that Ms. Horn has been paid all she is due for her performance, the Court need not analyze her claim for lost profits any further.

## CONCLUSION

A further comment is needed in this case.  It is unfortunate that the Government has continued to use this standard form document that appears to the non-legal reader as a binding contract, but is in fact not.  It is clear that this document misled Ms. Horn into believing she had an agreement with the Government when, in reality, the agreement was unenforceable.  More to the point, even the Government officials with whom she dealt did not seem to understand the document's lack of enforceability.  This point is particularly troublesome to the Court.  While there are certainly instances where a contract contains a latent defect rendering it unenforceable, this is not the case here.  As early as 1929, the Supreme Court put the Government on notice that this type of contractual language created an unenforceable instrument.  *See Willard, Sutherland & Co.*, 262 U.S. at 493.  In 1984, the Court in *Ralph Constr. Inc.* similarly declared an indefinite quantities contract unenforceable that contained seemingly identical FAR language.  *See Ralph Constr. Inc.*, 4 Cl. Ct. at 731-32.   Yet, more than a quarter of a century later, these FAR provisions are *still* rendering contracts unenforceable and unsuspecting contractors are being denied the opportunity to pursue what may be meritorious claims.

While it does not appear that the Government sought to intentionally mislead Ms. Horn, and Ms. Horn appears not to have relied on the agreement to her detriment, it has produced this litigation unnecessarily.  Since there is no evidence Ms. Horn gave up another job offer in reliance on this agreement, she does not have any claim to reliance damages, which may be available in some cases when a contract fails.  Though, the law in this jurisdiction is not completely clear on this point.

It is also true that the fairly unambiguous language of the agreement made it clear to Ms. Horn that she had only the possibility of a potential 1,560 hours of work, and that in-house service providers could greatly reduce that amount.  When she started her work for the BOP, she was put on notice of this fact.  In the future, the Government's contracting officers should make this point much clearer and disclose the fact that this type of agreement is not a legally binding

contract.  That would make misunderstandings, such as those in this matter, less likely and save all parties involved the expense of litigation.

For the forgoing reasons, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment.  As a result, Plaintiff's Complaint is hereby **DISMISSED.**[6]  The Clerk is instructed to enter judgment accordingly.  Each party shall bear its own costs.

It is so **ORDERED.**

 s/ Loren A. Smith
LOREN A. SMITH,
Senior Judge

---

[6] / In Response to the Government's Motion for Summary Judgment, Ms. Horn asserts, for the first time, that the Government "did not use reasonable care in the determination of its estimated need for contract dental hygienist services," which amounts to a "negligent estimation." Pl.'s Resp. 6-8.  Unfortunately, the Court's conclusion renders Ms. Horn's contract with the BOP unenforceable.  Without an enforceable contract, a breach of contract claim cannot succeed in this Court, even if the factual allegations are true.